

FILED

FEB 0 7 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT CARDONA-LOPEZ,<br><br>Defendant. | Case No.: 3:17-cr-00643-BEN-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO QUASH SEARCH WARRANT AND SUPPRESS EVIDENCE** |

Defendant Vincent Cardona-Lopez moves to quash a second search warrant[1] and suppress evidence obtained by searching his cell phone pursuant to said warrant. The government opposes. For the reasons set forth below, Defendant's motion is denied.

---

[1] Defendant previously filed a motion to quash a search warrant and suppress evidence obtained by searching his cell phone pursuant to that warrant. The government responded that Defendant's motion was moot because it had been unable to search Defendant's phone and thus no evidence had been derived. Several months later, the government informed Defendant that it had obtained a second search warrant for his phone and conducted a search pursuant to that warrant. In response, Defendant moved to renew his earlier motion "[t]o the extent the new application and warrant track the language of the previously produced application and warrant." (Docket No. 45-1 at p. 7.)

As it appears Defendant does not dispute the government's representation that no search was conducted and no evidence was derived from the first search warrant, Defendant's previous motion is denied as moot. The Court has reviewed and compared

# I.    Background[2]

On March 7, 2017, Defendant applied for entry into the United States at the San Ysidro, California Port of Entry.  He was the registered owner, sole occupant, and driver of a 2007 Toyota Corolla.  After a Customs and Border Protection Officer received a negative customs declaration from Defendant, the officer noticed Defendant's car was unusually clean, had been in Mexico a very short time, and had a limited crossing history, Defendant was directed to a secondary lot for further inspection.  During the secondary inspection, eight packages were found concealed within Defendant's vehicle; each package field-tested for methamphetamine.  Subsequently, government agents arrested Defendant and seized his cell phone.

On December 18, 2017, the government applied for and obtained a warrant to extract and analyze the data from Defendant's cell phone.  The supporting affidavit set forth the circumstances of Defendant's arrest, explained that narcotics smugglers commonly use cell phones to communicate instructions on how to cross the border and where and when to deliver the controlled substances, and asserted that information in the phone was likely to identify Defendant's criminal associates and communications relevant to his crimes.  As to the methods that would be used, the affidavit stated:

> 19.  Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis.  All forensic analysis of data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

---

the first and second search warrants, which do not appear to be materially different. (*Compare* Docket Nos. 34-2 & 52-1.)  Therefore, the Court construes Defendant's purported "renewed" motion as a motion to quash the second search warrant and suppress evidence obtained under the second search warrant.  Per Defendant's request, the Court shall consider the arguments raised in the initial motion in the context of the second search warrant.

[2] The facts in this section are drawn from the Complaint, Defendant's motion, and the government's opposition and exhibits.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

(Docket No. 52-1, Ex. 1 at p. 13.)[3]

The search warrant also described the objects of the search:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling narcotics from Mexico to the United States and within the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of narcotics from Mexico to the United States and within the United States, such as stash houses, load houses, or delivery points. [sic]

    e. tending to identify the user of, or persons with control over access to, the subject phones;  or

---

[3] The Court's reference to page numbers in the parties' briefings are to the numbers generated by the CM/ECF system.

3

f. tending to place in context, identify the creator or
recipient of, or establish the time of creation or receipt of
communications, records, or data above. [sic]

which are evidence of violations of Title 21, United States
Code, Section 952, 960, and 963.

(*Id.* a p. 5.)

As of January 8, 2018, the date Defendant filed the instant motion, Defendant had not received a copy of the warrant application, the warrant itself, or the results of the search. On January 16, 2018, the government filed an opposition to Defendant's motion, and attached the search warrant. Neither party's moving papers included declarations to support the factual premises asserted, as required by this District's Local Criminal Rules.[4] As a result, the Court was not required to hold an evidentiary hearing for Defendant's motion. *See United States v. Herrara-Rivera*, 832 F.3d 1166, 1170 ("Because Herrera-Rivera failed to meet the requirements of Rule 47.1, there were no contested issues of fact, properly joined, that necessitated holding an evidentiary hearing to resolve the motion. Thus, the district court did not abuse its discretion by denying the request for a hearing.").

Nevertheless, during a motion *in limine* hearing on January 22, 2018, the Court entertained oral arguments. During the hearing, the Court asked Defendant to identify the specific evidence he wished to have suppressed. Rather than point to specific evidence, Defendant asserted all evidence should be suppressed on the grounds that the proffered probable cause was insufficient to support the search warrant in its entirety. Alternatively, if the Court found probable cause existed, Defendant indicated the Court

///

---

[4] Southern District of California's Local Criminal Rule 47.1 states that "[c]riminal motions requiring a predicate factual finding must be supported by declaration(s). . . . The court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition." S.D. Cal. Crim. R. 47.1(g)(1).

1 should suppress all evidence dated prior to March 6, 2017 (the day before Defendant's

2 arrest) because there was insufficient probable cause to support a search prior to that date.

## II. Legal Standard

4     Under the Warrant Clause of the Fourth Amendment "no Warrants shall issue, but

5 upon probable cause, . . . and particularly describing the place to be searched, and the

6 persons or things to be seized." U.S. Const. amend. IV. To satisfy these requirements, a

7 warrant must comply with two distinct rules. First, it must describe the place to be

8 searched or things to be seized with sufficient particularity, taking into account the

9 circumstances of the case and the types of items to be seized. *See United States v. SDI*

10 *Future Health, Inc.,* 568 F.3d 684, 702 (9th Cir. 2009). Second, it must be limited by the

11 probable cause upon which the warrant is based. *Id.* These aspects of specificity are

12 referred to as "particularity" and "breadth." *Id.* Evidence obtained pursuant to a warrant

13 that violates either requirement must generally be suppressed, unless an exception to the

14 exclusionary rule applies, such as the exception for "a search conducted in good faith

15 reliance upon an objectively reasonable search warrant." *Id.* at 706 (internal quotation

16 marks omitted).

## III. Discussion

18     Defendant advances two primary arguments in support of his motion. First, the

19 search warrant application did not establish probable cause and therefore the search

20 warrant was invalid at the time it was issued. Second, even if the Court finds probable

21 cause existed to issue the warrant, the warrant was invalid because it was insufficiently

22 particular and overbroad, and "fails to include constitutionally sufficient methodology."

23 (Docket No. 34-1 at p. 9.) Each of Defendant's arguments are without merit.

24 **A. Probable Cause to Issue the Search Warrant**

25     The parties agree that "[p]robable cause exists when 'there is a fair probability that

26 contraband or evidence of a crime will be found in a particular place.'" *United States v.*

27 *Grubbs,* 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

28 "Whether there is a fair probability depends upon the totality of the circumstances,

5

including reasonable inferences, and is a commonsense, practical question. Neither certainty nor a preponderance of the evidence is required." *United States v. Kleinman*, No. 14-50585, 2017 WL 6997333, at \*11 (9th Cir. June 16, 2017) (quoting *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal quotation marks omitted). In the Ninth Circuit, a magistrate judge's determination that probable cause exists is accorded "great deference." *Id.* Additionally, "[i]n drug investigations a court 'may consider the experience and expertise of the officers involved,' which experience and expertise 'may lead a trained narcotics officer to perceive meaning from conduct which would otherwise seem innocent to the untrained observer.'" *United States v. Santillan*, 571 F. Supp. 2d 1093, 1100 (D. Ariz. 2008) (quoting *United States v. Buckner,* 179 F.3d 834, 837 (9th Cir. 1999)).

Defendant asserts probable cause was lacking because "the entirety of the government's attempt to establish probable cause is based on Agent Hallat's claim that (1) Mr. Cardona possessed a cell phone; (2) drugs were found in his car, [sic] and (3) drug smugglers possess cell phones." Defendant's selective reading of the supporting affidavit is baseless.

The parties appear to agree that Defendant was arrested for attempting to import 3.5 kilograms of methamphetamine in a load vehicle.[5] In support of its application to search Defendant's phone, the government provided the affidavit of Special Agent Christopher Hallat, who relied on his training and experience investigating narcotics trafficking organizations. (*See* Docket No. 52-1 at pp. 8-10.) In his experience, narcotics smugglers work in concert with co-conspirators and are in telephonic contact with co-conspirators immediately before and after the crossing of a load vehicle. (*Id.*) At the time of his arrest, agents seized the target telephone from Defendant's person. (*Id.* at p. 11.) Based on his experience and investigation in this case, Agent Hallat opined that

---

[5] The Complaint indicates Defendant was arrested for attempting to import 4.72 kilograms of methamphetamine. (*See* Docket No. 1.)

Defendant was part of an on-going conspiracy to import, transport, possess, and distribute methamphetamine, and likely used the target telephone to coordinate with co-conspirators regarding the importation and delivery of the drugs. (*Id.*)

That drug smuggling operations use cell phones to contact each other, to give direction and instructions, that they use scouts and multiple vehicles to cross drugs, are all well-known strategies.[6]

It is also well-known that smugglers will buy cars and provide them to the drivers who will sometimes burn the plates (*e.g.*, drive the vehicle across the border one or more times without drugs so as to establish a lawful crossing history) before using the vehicle to smuggle the drugs.[7]

---

[6] *See, e.g.*, *United States v. Villasenor*, 608 F.3d 467, 469-70 (9th Cir. 2010) (During an Immigration and Customs Enforcement ("ICE") interview of a person caught smuggling drugs, the smuggler admitted involvement in a larger drug trafficking organization and gave details about their operations: "He told the agents that in the near future he was to meet up with a white Toyota Tacoma, which would serve as a 'load vehicle,' and a white PT Cruiser, which would serve as a 'scout vehicle.'" He would meet up with others across the California side of the border, who would lead him to the drop-off location. "The smuggler did more than just talk: he showed the agents a picture of the PT Cruiser on his cell phone[.]"); *United States v. Pratt*, 104 F. App'x 135, 138 (9th Cir. 2004) ("Agent Benson had learned from fellow border patrol agents that it was a common practice of drug smugglers to have one person drive through a port of entry without contraband, while others walk across the border, undetected, with contraband, and later are picked up by the driver."); *United States v. Figueroa-Espinoza*, 454 F.2d 590, 591 (9th Cir. 1972) (per curiam) (customs agent "knew that it was common practice among smugglers to send an empty 'scout vehicle' ahead of the 'load vehicle.'"); *United States v. Rodriguez-Rubio*, No. CR 13-01784-TUC-RCC, 2014 WL 800539, at *1 (D. Ariz. Feb. 28, 2014) (government agents defining "'tandum [sic] driving' as a tactic used by drug traffickers where one car is loaded with contraband (the 'load' car) and the other car (the 'heat' vehicle) acts as the scout or security to distract law enforcement and ensure that the load vehicle escapes detection.").

[7] *People v. Covarrubias*, 202 Cal. App. 4th 1, 6 (Cal. Ct. App. 2011) ("Agent Flood stated that drug trafficking organizations often provide vehicles to mules for transporting drugs, but also said that it is common for the vehicle to be registered in the mule's own name, and that a border inspector will often ask more questions of a person

1   Therefore, following the guidance of the Ninth Circuit to use a commonsense

2   approach, draw reasonable inferences, and give great deference to a magistrate judge's

3   findings, the Court finds the warrant application indicated there was a fair probability that

4   evidence of narcotics trafficking would be found within the memory of the target

5   telephone. Accordingly, Defendant's motion on this ground is denied.

6   **B.    Specificity**

7       1.    <u>Particularity</u>

8       Defendant first contends that the warrant's use of the words "including but not

9   limited to" and "tending to indicate" to describe the information to sought gave law

10  enforcement too much discretion and not enough meaningful restrictions on the search.[8]

11  (Docket No. 34-1 at pp. 5-7.) He further argues that the government could (and should)

12  have crafted a description based on the people or phone numbers Defendant had been

13  communicating within the week before his arrest. (*Id.*)

14      The government counters that the use of such phrases does not render a warrant

15  *per se* unreasonable, and that the Ninth Circuit has rejected similar arguments when

16  context limited the scope of the search. (Docket. No. 52 at p. 6.) For example, in *United*

17  *States v. Reeves,* 210 F.3d 1041 (9th Cir. 2000), the words "may include, but is not

18  limited to," and "other items" did not make a warrant impermissibly overbroad because

19  context made clear that the search was for "evidence of the possession, manufacture, and

20  delivery of the controlled substance methamphetamine." *Id.* at 1046. Additionally, in

21  *United States v. Shi,* 525 F.3d 709 (9th Cir. 2008), the words "including, but not limited

22

23

24  who is driving a vehicle that is not registered in his or her own name. Agent Flood
    explained that drug trafficking organizations also will perform 'dry runs' in which a

25  vehicle that the smugglers intend to use at a later time to transport drugs across the border
    will be driven across the border with no drugs hidden in it, in order to practice the

26  operation and to establish a history of border crossings with a driver and a particular

27  vehicle.")

28  [8] Defendant also alludes to the warrant's "overdrawn timespan," which he later
    argues and the Court addresses below in the "Overbreadth" section.

1  to" did not make a warrant insufficiently particular because it authorized a search of only

2  the limited area the defendant inhabited. *See id.* at 731.

3  　　Similarly, in this case, context provided by the warrant limited the search to a

4  limited area (the contents of Defendant's cell phone) and plainly directed searchers to

5  look for information relevant to drug trafficking and to identifying Defendant's

6  communications, movements, and co-conspirators.[9] That information bore directly on

7  the crime for which he was arrested.[10] Indeed, the warrant's words "tending to indicate"

8  are functionally identical to the words the Federal Rules of Evidence use to define the test

9  for relevance: "Evidence is relevant if . . . it has *any tendency* to make a fact [of

10 consequence] more or less probable." Fed. R. Evid. 401 (emphasis added).

11 　　Finally, Defendant's reliance on *United States v. Bridges*, 344 F.3d 1010 (9th Cir.

12 2003) is misplaced. As the government correctly identifies, although the Ninth Circuit

13 expressed concern with the words "including but not limited to," it ultimately held that

14 "this warrant's failure to specify what criminal activity was being investigated, or

15 suspected of having been perpetrated renders its legitimacy defective." *Id.* at 1016-18.

16 Simply put, *Bridges* does not stand for a prohibition against the use of certain phrasing in

17 identification of places or things to be searched and seized. Here, unlike in *Bridges*, the

18 search warrant includes the specific criminal activity being investigated, and incorporated

19 the affidavit that supported it. *Id.* at 1018. As a result, the court concludes that the

20 language Defendant objects to does not render the warrant insufficiently particular.

21 　　2.　　Overbreadth

22 　　Next, Defendant asserts the search warrant is unconstitutionally overbroad. In

23 essence, Defendant complains that there was insufficient probable cause to support the

24

25 _____

26 　　[9] The full text of the search description is set forth in the Background section,

27 above.

28 　　[10] Thus, contrary to Defendant's assertion otherwise, the warrant was in fact "tied
   to the facts of the case." (*See* Docket No. 34-1 at p. 7.)

3:17-cr-00643-BEN-1

time period of the search: October 6, 2016 to March 8, 2017.[11] As discussed above, during a motion *in limine* hearing on January 22, 2018, Defendant suggested the evidence only supported a search time period of one day prior to his March 7, 2017 arrest. The Court disagrees.

Contrary to Defendant's contention that "[n]othing in the application for the search warrant discusses events so far back in time from Mr. Cardona's arrest," Agent Hallat's affidavit (which is specifically incorporated by reference in the search warrant) identifies October 6, 2016 as the date Defendant registered as the owner of the vehicle he was driving (and with which he was allegedly attempting to import drugs) at the time of his arrest. (*See* Docket No. 52-1 at p. 11.)[12]

In light of Agent Hallat's opinion that Defendant was in an on-going conspiracy to import, transport, possess, and distribute methamphetamine, it would not be unreasonable to infer that the car, which was registered to Defendant shortly before his arrest, may have been acquired to further this conspiracy. As such, it would also not be unreasonable to use the registration date as starting point in the search of the phone.

In short, Defendant's overbreadth argument fails because the Court is satisfied there was sufficient probable cause to support the time period of the search.

### 3. Insufficient Search Methodology

Finally, Defendant argues that the warrant was insufficiently particular and overbroad because it lacked a sufficient methodology. (Docket. No. 34-1 at pp. 9-13.) Specifically, he complains that "the Methodology in the warrant applications did not say anything meaningful or precise about what would happen during the search. Among

---

[11] Defendant also repeats his earlier argument that the search warrant was not based on sufficient probable cause, which the Court rejected earlier in this Order.

[12] The prior search warrant and warrant application also included this information. (*See* Docket No. 34-2 at p. 6.) In fact, the magistrate judge shortened the warrant's original request from six months prior to Defendant's arrest to this October 6, 2016 date. (*See id.* at p. 16.)

other deficiencies, it failed to indicate: "(1) the type of 'forensic analysis,' (2) what 'search protocols' would be employed, and (3) when/if computer-assisted searching would yield to manual searching." (*Id.* at pp. 10-11.) Defendant also objects that the search warrant did not provide a method for segregating unreviewable data, did not provide specific guidance on how to determine which data had a nexus to the crime, did not indicate whether the government would image the device, and did not account for the segregation, return, or destruction of data that fell outside the scope of the warrant. (*Id.*)

Defendant's position relies largely on *In re Nextel Cellular Telephone,* in which a Kansas magistrate judge denied an application for a warrant for similar reasons. *See* 2014 WL 2898262 (D. Kan. June 26, 2014). *Nextel* is not binding on this Court, however.[13] As courts in this District have discussed, these measures are not required in

---

[13] Notably, even if Defendant's motion were being considered in a federal district court in the District of Kansas, *Nextel* would not likely aid his case. As discussed by District Judge J. Thomas Marten:

> This court has previously explained why *Nextel* provides little support for a challenge to a search which was . . . conducted pursuant to a validly issued warrant:
>
> > In *Nextel,* the Magistrate Judge declined to authorize a search warrant based upon concerns that the methodology for the search submitted by the government was imprecise and might collect information unrelated to the criminal investigation. *But while this may have been a wise and appropriate resolution to the warrant request before him, this case is of course in an entirely different posture*
> >
> > In *Nextel,* the government was free to submit a new and corrected warrant application. Here, the magistrate already issued the search warrant. Accordingly, this court views the decision to grant the warrant with great deference. *United States v. Martinez,* 764 F.2d 744, 746 (10th Cir. 1985) (quoting *Illinois v. Gates,* 462 U.S. 213,

this circuit or under the facts of this case. *See United States v. Hernandez*, No. 15-CR-2613-GPC, 2016 WL 471943, at *5 (S.D. Cal. Feb. 8, 2016) ("the Ninth Circuit has declined to specify a mandatory search protocol for electronic warrant-based searches.") (internal citation omitted); *United States v. Garcia-Alvarez*, No. 14-CR-0621 JM, 2015 WL 777411, at *5 (S.D. Cal. Feb. 24, 2015) (quoting *United States v. Nazemzadeh*, 2013 WL 544054, at *5 (S.D.Cal. Feb.12, 2013)) ("Defendant's contention that a search protocol was required is contrary to the law in the Ninth Circuit.") (internal quotation marks omitted).

Moreover, although "the Ninth Circuit has 'look[ed] favorably upon the inclusion of a search protocol . . . its absence is not fatal.'" *Hernandez*, 2016 WL 471943, at *5 (citing *United States v. Hill*, 449 F.3d 966 (9th Cir. 2006)) (declining to require a search protocol for a computer in a child pornography case); *United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013) (declining to require a search protocol for the search and seizure of a defendant's computer system and all of his digital storage devices in a child pornography case); *Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) (en banc) (per curiam) (declining to adopt Judge Kozinski's concurring opinion laying out "guidance" for digital searches).

In sum, the Court is not persuaded the search protocols are either insufficiently particular or overly broad such that the search warrant is invalid.

///

///

---

236 (1983)). *Nextel is simply not controlling here. Rather, as the Tenth Circuit has observed, a "computer search may be as extensive as reasonably required to locate the items described in the warrant." United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009).

*United States v. Beasley*, No. 13-10112-01-JTM, 2016 WL 502023, at *8 (D. Kan. Feb. 8, 2016) (emphasis added).

# IV. Conclusion

For all of the foregoing reasons, Defendant's motion to quash the search warrant and suppress evidence obtained by searching his cell phone is denied.

DATED: February 05, 2018

_____
HON. ROGER T. BENITEZ
United States District Judge

13